IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL L. WILLIAMS,<br>    Plaintiff | : |
| v. | : Case No. 10-CV: |
| AAA CENTRAL PENN,<br>    Defendant | : Jury Trial Demanded |

## COMPLAINT

PRELIMINARY STATEMENT

The Plaintiff, Carol L. Williams, seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; liquidated damages; and costs and attorneys' fees for the age, race discrimination and retaliation for protesting sex discrimination, resulting in her termination from Defendant's employment; and complaining of the Defendant, alleges that:

JURISDICTION AND VENUE

1. This action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and Title VII of the Civil Rights Act, 42 U.S.C. §2000e, et. seq. (hereinafter "Title VII").

2. Jurisdiction over the ADEA and Title VII claims is invoked pursuant to 28 U.S.C. §1331 and 1343(4). This action is authorized and instituted pursuant to 29 U.S.C. §633(c) and 42 U.S.C. §2000a-6.

3. This action encompasses a pendent claim based on Defendant's violations of the protections afforded to Plaintiff by the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.

4. Inasmuch as Plaintiff's federal claims and her state PHRA claim arise out of a common nucleus of operative fact, this Court has ancillary jurisdiction over Plaintiff's PHRA claim.

5. A right-to-sue letter was issued by the US Department of Justice on July 15, 2010, a true and accurate copy of which is attached hereto as Exhibit "A", based upon a complaint timely filed with both the EEOC and the Pennsylvania Human Relations Commission. A true and accurate copy of the complaint is attached hereto as Exhibit "B".

6. Venue properly lies with this Court pursuant to 28 U.S.C. § 1391, as the unlawful employment practices giving rise to Plaintiff's claims occurred in this district.

PARTIES

7. Plaintiff Carol L. Williams (hereinafter "Williams"), age 61, is an adult individual residing at 1128 Blackheath Drive, Harrisburg, Pennsylvania and was an employee as defined under 29 U.S.C. §630(f), and 42 U.S.C. §2000e(f) and 43 P.S. §954(c) at all times relevant to this Complaint.

8. Defendant AAA Central Penn ("AAA") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address at 2301 Paxton Church Road, Harrisburg, Pennsylvania 17110, with a total number of employees in excess of the applicable jurisdictional requirements and was an employer as defined under 29 U.S.C. §630(b), 42 U.S.C. §2000e (b), and 43 P.S. §954(b) at all times relevant to this Complaint.

FACTS

9. In or about March 2004, Plaintiff Williams was hired by Defendant AAA in the position of Call Taker in Defendant's office in Harrisburg, Pennsylvania until when she voluntarily resigned in June 2004.

10. On or about October 31, 2005, Plaintiff began working for the Defendant AAA for a second time in the position of Call Taker and was promoted to Dispatcher Emergency Road Service.

11. Plaintiff's duties as Call Taker included taking calls of emergency roadside services. As a Dispatcher, Plaintiff was responsible to assure members received services by dispatching services as requested.

12. Beginning January 2006, Plaintiff Williams reported directly to Eric Harding, her immediate supervisor, who's age was approximately 34 years old, at the time Plaintiff was employed by Defendant.

13. Defendant gave Plaintiff her first warning on April 9, 2008, accusing Plaintiff of leaving work without permission, even though Plaintiff had requested the time off in advance as required from her supervisor, Eric Harding, who approved the request by telephone, stating "I will take care of it".

14. On January 21, 2009, Plaintiff reported to Defendant's Vice President of Human Resources, Barbara Roth, that she was aware other female employees were being sexually harassed and treated differently from the male employees.

15. On or about January 22, 2009, Plaintiff made a suggestion to her supervisor, Mr. Harding, as to how her work and daily tasks could better be divided between herself and her co-worker for efficiency purposes.

16. Defendant's Supervisor Harding became enraged without provocation by Plaintiff. He told her in a harsh and intimidating fashion to "just do what I told you to or you can go home".

17. On January 22, 2009, Plaintiff requested to meet with Defendant's Human Resource Department and did have a meeting with Defendant employee Dorcas Early, a Human Resource Assistant, to discuss the treatment to which she had been subjected by Mr. Harding.

18. Ms. Early simply advised Plaintiff that she must do what her supervisor told her to do.

19. Plaintiff then requested that she take the option given to her by Mr. Harding of going home for the remainder of the day and she would take it without pay as long as it was not regarded as job abandonment.

20. Plaintiff returned to work on January 23, 2009, the next day, and was told by Barbara Roth, Vice President of Human Resources, Dorcas Early, Tyrone Dickey, and Eric Harding, that she had been discharged for insubordination.

21.     Ms. Roth gave Plaintiff a notice of involuntary termination with two Employee Corrective Action Reports attached. One report dated September 9, 2008 had been given to Plaintiff previously, which she refused to sign because she disagreed with the content, and the other dated September 11, 2008 had never been presented to Plaintiff previously.

22.     The letter of warning given to Plaintiff by Defendant on September 13, 2008 accused Plaintiff of not speaking to her supervisor when she address Plaintiff. This warning was rescinded on September 18, 2008 by Defendant when Plaintiff protested the warning.

23.     Plaintiff is aware of a much younger, Caucasian, employee, Denice Kinderman, who told her immediate supervisor, Jackie Carrasquello to "go fuck yourself" and Defendant did not discharge Ms. Kinderman.

24.     Further, employee Kinderman had chased another supervisor, Doni Rogers, around a desk screaming at Ms. Rogers that she was going to "fuck you up". Again, she was not discharged for this action.

25.     Another younger employee, Nancy Cintron, also swore at her immediate supervisor, Jon Krehling, and was not discharged.

26.     Plaintiff heard her Supervisor, Eric Harding, state "if I had my way, I would get rid of everyone in here that is over 40 and only hire people under 40".

27.     Defendant has a Human Resource Department and is fully aware of the state and federal anti-discrimination laws.

28.     Plaintiff was terminated from her employment two days after meeting with Barbara Roth, Vice President of Human Resources, to protest treatment of women by Defendant in the workplace.

## COUNT I
### AGE DISCRIMINATION IN VIOLATION OF THE ADEA

29.     Plaintiff incorporates as if realleged herein Paragraphs 1 through 28.

30. Plaintiff successfully performed her job duties throughout her employment with Defendant AAA.

31. Plaintiff did receive a letter of warning dated September 13, 2008 which was rescinded by Defendant after Plaintiff pointed out errors in the decision to give her a letter of warning. The April 2008 warning was without merit and the September 11, 2008 warning was never presented to Plaintiff prior to her discharge on January 23, 2009.

32. At least two much younger employees committed egregious acts against her supervisor such as threatening and using profane language towards their supervisors yet they were not terminated from employment.

33. Defendant Supervisor, Eric Harding, made a specific statement that he wanted to terminate employees over the age of 40.

34. In 2009 after Plaintiff's termination from employment, Eric Harding terminated Deeana Cornelius in her mid 40's and Portia Taylor in her 60's.

35. Defendant violated provisions of the ADEA by using Plaintiff's age as the reason for termination of her employment and overlooking egregious acts of insubordination by younger employees, and Plaintiff is thus entitled to relief under the provisions of § 626 of the ADEA.

Count II
Race Discrimination in Violation of Title VII

36. Plaintiff incorporates as if realleged herein Paragraphs 1 through 31.

37. Plaintiff is a female of African American descent.

38. Plaintiff successfully performed her job duties throughout her employment with Defendant.

39. Plaintiff was terminated from her employment while a female Caucasian, Denice Kinderman, and non-African American Nancy Cintron, were allowed to commit egregious acts of insubordination and were not terminated from their employment.

40. Defendant violated provisions of Title VII of the Civil Rights Act by considering Plaintiff's race as a motivating factor in the decision to terminate her employment, and Plaintiff is thus entitled to relief under Title VII of the Civil Rights Act.

## Count III
## Willful Violation of ADEA

41. Plaintiff incorporates as if realleged herein Paragraphs 1 through 35.

42. Plaintiff successfully performed her job duties throughout her employment with Defendant AAA.

43. Plaintiff did receive a letter of warning in September of 2008 which was rescinded by Defendant after Plaintiff pointed out errors in the decision to give her a letter of warning. The April 2008 warning was without merit and the September 11, 2008 warning was never presented to Plaintiff prior to her discharge on January 23, 2009.

44. At least two much younger employees committed egregious acts against her supervisor such as threatening and using profane language towards their supervisors yet they were not terminated from employment.

45. Defendant Supervisor, Eric Harding, made a specific statement that he wanted to terminate employees over the age of 40.

46. Defendant was fully aware of the state and federal laws prohibiting discrimination on the basis of age and acted intentionally, wantonly and in reckless disregard of said laws.

## Count IV
## Willful Intentional Violation of Title VII of the Civil Rights Act

47. Plaintiff incorporates as if realleged herein Paragraphs 1 through 28 and 36 through 40.

48. Plaintiff successfully performed her job duties throughout her employment with Defendant AAA.

49. Plaintiff did receive a letter of warning in September of 2008 which was rescinded by Defendant after Plaintiff pointed out errors in the decision to give her a letter of warning. The April 2008 warning was without merit and the September 11, 2008 warning was never presented to Plaintiff prior to her discharge on January 23, 2009.

50. At least two non-African American employees committed egregious acts against her supervisor such as threatening and using profane language towards their supervisors yet they were not terminated from employment.

51. Defendant was fully aware of the state and federal laws prohibiting discrimination on the basis of race and acted intentionally, wantonly and in reckless disregard of said laws.

Count V
Age Discrimination in Violation of the PHRA, 43 P.S. §951 et. seq.

52. Plaintiff incorporates as if realleged herein Paragraphs 1 through 28 and 29 through 35.

53. Because Plaintiff's age was a motivating factor in the decision to terminate her employment, Defendant's actions violate the PHRA.

Count VI
Race Discrimination in Violation of the PHRA, 43 P.S. §951 et. seq.

54. Plaintiff incorporates as if realleged herein Paragraphs 1 through 28.

55. Because Plaintiff's race was a motivating factor in the decision to terminate her employment, Defendant's actions violate the PHRA.

## Count VII

### Retaliation for Protesting Rights Protected under Title VII of the Civil Rights Act and under the PHRA

56. Plaintiff incorporates as if realleged herein Paragraphs 1 through 28.

57. Plaintiff was unlawfully and retaliatorily terminated from her employment two days after protesting the treatment of women by Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court:

i. accept jurisdiction of all claims set forth in this Complaint;

ii. grant Plaintiff a trial by jury on all issues;

iii. declare Defendant's conduct to be in violation of Plaintiff's rights;

iv. grant Plaintiff preliminary and permanent injunctive relief reinstating her to her former position as Dispatcher, with full seniority and other benefits as if she had never been discharged;

v. award Plaintiff equitable relief of back salary and other benefits, including all fringe benefits to which she would have been entitled had her employment with Defendant not been interrupted. The exact amount of such damages shall be determined at trial;

vi. award Plaintiff compensatory damages for the humiliation, damage to her reputation, mental and emotional distress, and pain and suffering that she has experienced and endured as the result of the discriminatory actions of Defendant towards her. The exact amount of such damages shall be determined at trial;

vii. award Plaintiff costs and attorneys' fees;

viii. grant liquidated damages based on willful violation under the ADEA;

ix. award punitive damages under Title VII of the Civil Rights Act.

  x. grant such other relief as the Court deems just and proper.

              Respectfully submitted,

Date:            _____
             Lori K. Serratelli, Esquire
             *SERRATELLI, SCHIFFMAN*
               *& BROWN, P.C.*
             Attorney ID No. 27426
             2080 Linglestown Road, Suite 201
             Harrisburg, PA  17110
             (717) 540-9170
             *Attorney for Plaintiff*

Jury Trial Demanded